UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
RAYMOND COLON,                          )
                                        )
          Petitioner,                   )
                                        )
               v.                       )          Civil Action No. 08-10884-PBS
                                        )
STEVEN J. O'BRIEN,                      )
                                        )
          Respondent.                   )
_____)

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

March 9, 2012

BOAL, M.J.

       On May 23, 2008, Raymond Colon ("Colon"), who is currently serving a life sentence in

a Massachusetts correctional facility, petitioned this Court for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996

(AEDPA) ("Petition").  (Docket No. 1).[1]  The Respondent, Steven O'Brien, opposes the Petition.

(Docket No. 59).

       In his Petition,[2] Colon relies on the following basis for habeas relief: (1) the Supreme

_____

       [1]  As detailed more fully below, on January 5, 2009, the District Court stayed this action
so that Colon could exhaust a portion of his ineffective assistance of counsel claim in state court.
On August 30, 2011, the District Court referred Colon's petition to this Court for a report and
recommendation.

       [2]  On August 6, 2010, the District Court allowed Colon's motion to amend his petition.
The term "Petition" refers to the Petition originally filed by Colon, as well as the amendments
identified in Colon's motion to amend.  See Docket Nos. 1, 47.  The amendment supplies

-1-

Judicial Court ("SJC") relied on an unconstitutional standard to deny Colon his Fourth

Amendment right to privacy and/or his Fourteenth Amendment right to due process, Petition at

6;[3] (2) Colon was denied his Sixth Amendment right to effective assistance of trial counsel,

Petition at 8; (3) Colon was denied his Fifth and Fourteenth Amendment rights to a fair trial and

due process where the prosecutor argued facts not in evidence, Petition at 9; (4) pursuant to

M.G.L. c. 278, § 33E, the SJC should have reduced the verdict to a lesser degree of guilt based

on the facts of the case, Petition at 11; and (5) Colon was denied his Sixth Amendment right to

effective assistance of counsel when appellate counsel failed to raise meritorious claims,

Petition at 12-b.

For the reasons set forth below, I recommend that the District Judge DENY the Petition.

## I.     PROCEDURAL HISTORY

On June 18, 2001, after a seven-day trial at which Colon testified, a jury found Colon

guilty of (1) first-degree murder with deliberate premeditation; (2) unlawful possession of a

firearm; and (3) unlawful possession of a firearm without an identification card. See App.[4], Ex. B

at p. 7-8, 10.

On August 25, 2005, Colon filed a motion for new trial pursuant to Mass. R. Crim. P.

30(b), which was denied on October 20, 2005.  App., Ex. B at 9.  On June 22, 2006, Colon filed

his direct appeal, which was consolidated with his October 28, 2005 appeal of the denial of his

---

additional facts in support of his ineffective assistance of counsel claim.  See Docket No. 41, p.
3.

    [3]  The page numbers cited refer to the page number located in the upper right hand corner
of the Petition.

    [4]  "App." refers to Respondent's Appendix.  Docket No. 11.

motion for new trial.[5]  App., Ex. C at 3.  On May 22, 2007, the SJC affirmed Colon's convictions

and the denial of Colon's motion for new trial.  See Commonwealth v. Colon, 449 Mass. 207

(2007), App., Ex. K.  The United States Supreme Court denied certiorari on December 10, 2007.

App., Ex. L.

On July 23, 2007, Colon filed pro se another motion for a new trial, which alleged,

among other things, ineffective assistance claims regarding trial counsel's failure to call a

security guard and a psychologist as witnesses, and appellate counsel's failure to address these

issues on appeal.  App., Ex. M, O.  The Superior Court denied the motion, and Colon filed a

notice of appeal.  App., Ex. B at 10.  On October 24, 2007, Colon also filed a pro se application

for leave to appeal the denial of his second motion for new trial ("gatekeeper" petition).

Supplemental Appendix ("S.A."), Ex. B.  Docket No. 14.

On May 23, 2008, Colon filed pro se the instant Petition.  On July 18, 2008, the SJC

docketed Colon's second motion for new trial.[6]  S.A., Ex. A.  On August 18, 2008, Colon filed a

Motion to Stay the Petition in this Court so that he could exhaust his ineffective assistance of

counsel claims in state court.  Docket No. 15.  On January 5, 2009, the District Court granted a

stay so that Colon could exhaust those claims.  Electronic Order, January 5, 2009.

On November 16, 2009, Colon, through counsel, filed a motion in Superior Court for

reconsideration of the denial of Colon's second motion for new trial, which included supporting

---

[5]  On appeal, Colon pursued the issues presented in his current petition, with the
exception of the ineffective assistance counsel claims regarding the failure to call a security
guard and psychologist as witnesses.  See App., Ex. F.

[6]  It is unclear why Colon's motion was not docketed until this date.

affidavits from witnesses. RA[7] 18-36; 71-80. The Superior Court denied reconsideration on December 1, 2009. RA 37-38. Colon's counsel then supplemented Colon's pro se gatekeeper petition, seeking leave to appeal from the denial of Colon's second motion for new trial. RA 39-64. A single justice of the SJC denied the gatekeeper petition on June 14, 2010. RA 65-70.

On June 25, 2010, Colon moved to remove the stay on the instant petition. Docket No. 46. On June 28, 2010, he moved to amend the petition to add two factual bases to ground two of his petition: "trial counsel did not present a hired Psychologist at trial;" and "trial counsel did not present Security Guard eye-witness at trial." Docket No. 47 at 3. The District Court allowed the amendment, and granted the motion to remove the stay. Electronic Orders dated August 6, 2010 and January 5, 2011 respectively.

On August 10, 2011, Colon filed his Memorandum of Law in Support of Petitioner's Federal Habeas Corpus Petition ("Memorandum"). Docket No. 52. The Respondent filed his opposition ("Opposition") on December 21, 2011. Docket No. 59.

## II. FACTUAL BACKGROUND[8]

The SJC found the following facts, Colon, 449 Mass. at 208-212:

*1. The Commonwealth's case.* . . . Prior to the murder on July 7, 1999, the defendant and the victim had been friends and partners in a drug-dealing operation in Holyoke. However, "bad blood" developed between them resulting from a dispute over money that the defendant allegedly owed the victim.

At approximately 3 P.M. on July 7, the victim was speaking with his girl friend,

---

[7] "RA" refers to Colon's Record Appendix, dated August 10, 2011, filed with this Court in connection with his Memorandum of Law in Support of Petitioner's Federal Habeas Corpus Petition. Docket No. 53.

[8] Absent clear and convincing evidence to the contrary, the recitation of the facts by the SJC is presumed to be correct. See 28 U.S.C. § 2254(e)(1); Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Evans v. Thompson, 518 F.3d 1, 3 (1st Cir. 2008).

who was standing in front of 132 Sargeant Street in Holyoke. The defendant and his brother Eliott drove by and gave the victim a "hard look." Although it is not entirely clear from the record, it is important to note that the intersection of Chestnut Street and Sargeant Street is near 132 Sargeant Street, and there is a park across from 132 Sargeant Street, on the opposite side of Chestnut Street.

At some point that same day, the victim and two other people drove down Sargeant Street in a Toyota automobile and parked on the corner of Sargeant and Chestnut Streets. At that time, two of the defendant's brothers, David and Eliott, also appeared on Sargeant Street, carrying baseball bats. They approached the car and started swinging the bats. The victim got out of the vehicle and started backing up toward the park, telling David and Eliott to "chill" and to put their bats down so that he could fight them. Eliott advanced toward the victim, and one of the victim's companions, whose nickname was Flaco, pulled out a knife. David and Eliott told Flaco that "this thing" did not have to do with him and to get out of the way, which Flaco did. The victim had his hands in the air, and he was not holding anything. David and Eliott followed him into the park. The victim was in the park arguing with David and Eliott when the defendant entered the park. The victim's hands were still empty. When the defendant pulled a revolver out of his waistband, the victim ran. The defendant advanced on the victim and shot him from a distance of approximately five feet.

After the first shot, the victim grabbed his side and attempted to run away, but the defendant shot him two more times. The victim sustained gunshot wounds to his back, arm, and thigh. The victim ran out of the park and into the apartment of Pedro Gonzalez, a mutual friend of the defendant and the victim, which was located on the fourth floor of 304 Chestnut Street, where he collapsed on the floor. The bullet that entered the victim's back and passed through his chest was ultimately fatal.

Police learned that the defendant and his brothers were seen running into 306 Chestnut Street. At approximately 7 P.M. they found the defendant (and his brothers) inside the defendant's girl friend's apartment, and the defendant was taken into custody. The defendant made statements to the police at the time of his arrest to the effect that he was the shooter and that his brothers had not shot the victim. Police secured the apartment and returned during the early morning hours of July 8 with a search warrant. They recovered a revolver, an aluminum baseball bat, and a broken baseball bat. The gun and photographs of the bats were admitted in evidence at trial along with a spent projectile recovered from the second-floor landing at 304 Chestnut Street. The projectile matched the gun that was recovered.

*2. The defendant's case*. At trial, the defendant did not deny shooting the victim. However, he claimed he was acting in self-defense and defense of his brothers. . .

The defendant's trial testimony consisted of two parts. The first part concerned his relationship with the victim and the victim's history of violent behavior. The defendant met the victim in 1995 and became involved in the victim's drug business. The victim, who was described at trial as a "big man" who was over six feet tall, controlled "his area" of Holyoke through fear by beating up people who attempted to encroach on it. The defendant witnessed several of the beatings, including the beating of Francisco Marrerro, who was called as a corroborating witness. The victim owned several handguns, which were stored in a "ceiling trap" located on the fourth-floor landing of 304 Chestnut Street, near the apartment where Gonzalez lived.[9] After the tension arose between the defendant and the victim, the defendant began sneaking into his girl friend's apartment when he visited in order to avoid a confrontation with the victim.

The defendant saw the victim in May, 1999, and an argument ensued, during which the victim punched the defendant in the face and continued to hit him until a friend broke up the fight. The defendant did not hit the victim during the fight. The defendant again avoided the victim but, on July 4, he encountered the victim while driving down Chestnut Street. The victim told the defendant, "Get out the car so I can whip your ass like I did you brother," and that he would "whip both of your asses." One witness testified that on July 4, the victim told her that he was going to shoot the defendant's brother and make the defendant watch.

The second part of the defendant's testimony concerned events on the day of the murder. The defendant testified that on the afternoon of July 7, he encountered the victim on Commercial Street in Holyoke. Both men were driving automobiles, and the victim began to chase the defendant until the vehicle the defendant was driving crashed into another vehicle. Later that afternoon, the defendant and his brothers walked to 304 Chestnut Street to speak with Gonzalez about contacting a mutual acquaintance of the victim and defendant, who the defendant thought could resolve the animosity between them. The defendant entered Gonzalez's apartment and gave Gonzalez the acquaintance's pager number. Gonzalez testified that he realized that the defendant was planning to confront the victim, and he tried to talk the defendant out of doing so by telling the defendant that the victim was armed. Gonzalez tried the pager number more than once, but received no response. While Gonzalez was making the telephone calls, the defendant went into the hallway and took a gun from the storage area in the ceiling. The defendant entered Gonzalez's bedroom and placed the gun on Gonzalez's dresser.

The defendant then looked out the window and saw that a fight was developing

---

[9] Footnote 4 of SJC's decision, inserted at this point states: It is not clear from the record why the victim's guns were stored at 304 Chestnut Street. The defendant testified that he, the victim, and Gonzalez had access to the guns stored there.

between his brothers and the victim. The defendant asked Gonzalez what type of gun the victim had, and Gonzalez responded that he did not know. The defendant again asked Gonzalez if he was sure the victim was armed, and Gonzalez answered affirmatively. The defendant put the gun that he had obtained in his waistband and went outside.

He testified that he saw Flaco standing between the victim and Eliott with a knife and told Flaco to put the knife down. He stated that he was leading Eliott away from the victim. He also testified that he heard the victim say to his brothers, "I'm going to whip all of your asses." The victim started walking toward the defendant, saying, "Motherfucker, I'm going to blow your ass away." The defendant backed up. The victim reached for the door of his car, and the defendant, because he had been told that the victim was armed, assumed he was going for a gun. The defendant pulled out his gun and shot the victim.

Gonzalez testified that when the wounded victim entered his apartment, he asked Gonzalez to "get his gun." Gonzalez testified that he was loading the gun when the victim collapsed.

*3. Rebuttal*. The Commonwealth called three witnesses in rebuttal who all provided testimony about the car crash that the defendant was involved in during the afternoon of July 7, suggesting that there was not another vehicle close behind the defendant's car prior to the crash and that the damage to the defendant's car was not serious.

## III.   DISCUSSION

### A.   Habeas Corpus Standard Of Review

Colon may not obtain federal habeas relief under 28 U.S.C. § 2254(d) unless he can show that the SJC'S decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result." Id. at 406. The "unreasonable application" prong is satisfied if the state court "identifies

the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. 413. In reviewing a case under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410.

The AEDPA also allows relief from a state court judgment if that judgment is based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "Under this standard, 'the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary.'" RaShad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002) (citations omitted). "Unless the petitioner can carry this heavy burden, a federal habeas court must credit the state court's findings of fact." Id. (citations omitted).

B.     Ground One: Fourth Amendment Right to Privacy/ Right to Due Process

Colon argues that the SJC relied on an unconstitutional standard to deny him his Fourth Amendment right to privacy and/or his Fourteenth Amendment right to due process. Petition, p. 6. Colon does not argue this ground in his Memorandum. Nevertheless, Colon's claim fails.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976). Thus, "a federal habeas court ordinarily cannot revisit a state court's disposition of a prisoner's Fourth Amendment claims. . . [unless] a habeas petitioner had no realistic opportunity to litigate his Fourth Amendment claim fully and fairly in the state system." Sanna v. Dipaolo, 265 F.3d 1, 8

(1st Cir. 2001).  A petitioner bears the burden of proving that his case fits within this exception.

Id.  Colon's Fourth Amendment claims were addressed by both the Superior Court and the SJC.

See Colon, 449 Mass. at 212-218.  Although Colon appears to dispute the state courts'

determination, he fails to argue that he was not given an opportunity to present it fully and fairly

before the state court.  Accordingly, this Court recommends that Ground One of Colon's habeas

petition be denied.

      C.     Ground Two: Ineffective Assistance Of Trial Counsel

Colon contends that he did not receive constitutionally effective assistance from trial

counsel.  Colon raised different ineffective assistance of counsel claims at different points in his

appeal.  Because the timing of Colon's arguments implicates various procedural considerations,

the Court will address the ineffective assistance of counsel claims in the order they were

addressed by the SJC.

      1.     Claims Reviewed On Direct Appeal

On direct appeal, Colon contended that he did not receive constitutionally effective

assistance from trial counsel, specifically that trial counsel failed: (1) to question a witness,

Colon's girlfriend, to establish Colon's knowledge of the victim's previous threat to kill Colon's

brothers;[10] (2) to address in his closing argument Colon's defense that he was protecting his

brothers; (3) to request a manslaughter instruction; (4) to request a Franks hearing; and (5) to

---

[10]  Although raised in his Memorandum, Colon did not include this argument in his
Petition. Colon acknowledges in his Memorandum that the wording of the issues presented in the
Memorandum do not track the wording of the Petition, but argues that the legal issues are the
same.  Memorandum, p. 1, n.1.  Aside from noting that Colon failed to argue certain claims
raised in the Petition, Respondent did not object to this characterization.  Opposition, p. 8.

object when the prosecutor included facts not in evidence in her closing argument.[11]  Petition, p.

8; Memorandum, p. 13-18.[12]

a.      Ineffective Assistance of Counsel Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

enjoy the right to . . . have the Assistance of Counsel for his defense."  The right to counsel

includes the right to effective counsel.  Strickland v. Washington,  466 U.S. 668, 686 (1984).

The clearly established federal law relating to ineffective assistance of counsel claims is

based on Strickland.  Under Strickland, Colon must show that: (1) counsel's performance was

deficient, i.e. counsel made errors so serious that counsel was not functioning as "counsel

guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense,

i.e. counsel's errors were so serious as to deprive the defendant of a fair trial.  Strickland, 466

U.S at 687.  A lawyer need not be perfect.  "Judicial scrutiny of counsel's performance must be

highly deferential" and "every effort [should] be made to eliminate the distorting effects of

hindsight."  Id. at 689.  The Court "must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance, that is, the defendant must

overcome the presumption that under the circumstances, the challenged action 'might be

considered sound trial strategy.'"  Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To satisfy the first prong of the Strickland test, Colon must show that trial counsel's

performance was deficient to the point of being "objectively unreasonable."  See United States v.

_____

[11]  Because Colon's ineffective assistance of counsel claims based on the prosecutor's
statements necessarily implicate Colon's substantive claim on this basis, the Court will address
this claim when it addresses Ground Three of Colon's Petition.

[12]  The page numbers cited refer to the page number located at the bottom of the page.

McGill, 11 F.3d 223, 226 (1st Cir. 1993); Companonio v. O'Brien, No. 09-2428, 2012 WL 687979, * 6 (1st Cir. March 5, 2012). Reasonable conduct is conduct that falls "'within the range of competence demanded of attorneys in criminal cases.'" United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978), quoting McMann v. Richardson, 397 U.S. 759, 770-771 (1970). In other words, performance is constitutionally deficient "only if no competent attorney would have acted as [counsel] did." Companonio, 2012 WL 687979 at * 6.

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." Harrington v. Richter, 131 S.Ct. 770, 791-2 (2011). "The likelihood of different result must be substantial, not just conceivable." Id. at 792.

Because Colon was convicted of first degree murder, the SJC reviewed Colon's claims of ineffective assistance of counsel under the "substantial likelihood of a miscarriage of justice standard." Colon, 449 Mass. at 218. Citing Commonwealth v. Wright, 411 Mass. 678 (Mass 1992), the SJC stated that it would consider whether there was an error by defense counsel during trial, and if there was, whether that error was likely to have influenced the jury's conclusions. Id. This standard is more favorable to Colon than the Strickland standard or the Massachusetts constitutional standard. Knight v. Spencer, 447 F.3d 6, 10 (1st Cir. 2006); Kirwan v. Spencer, 631 F.3d 582, 590 n.3 (1st Cir. 2011). "Because the standard that the SJC employed is at least as protective of the defendant's rights as its federal counterpart, [the court]

may defer under Section 2254(d)(1) to its determination." Kirwan, 631 F.3d at 590 n.3 (internal

citation and quotation marks omitted). Further, the First Circuit has held that where the SJC

applies the more favorable "substantial likelihood of a miscarriage of justice" standard, its

decision will not be deemed "contrary to" the Strickland criterion. Knight, 447 F.3d at 15.

Accordingly, the pivotal issue for this Court is whether the SJC's application of the

Strickland standard was unreasonable. Harrington, 131 S.Ct. at 785. "This is different from

asking whether defense counsel's performance fell below Strickland's standard." Id. "Federal

habeas courts must guard against the danger of equating unreasonableness under Strickland with

unreasonableness under § 2254(d)." Id. at 788. "When § 2254(d) applies, the question is not

whether counsel's actions were reasonable. The question is whether there is any reasonable

argument that counsel satisfied Strickland's deferential standard." Id.

Because the Strickland standard is a general one, the range of reasonable applications of

Strickland is substantial. Id. Further, "[a] state court must be granted a deference and latitude

that are not in operation when the case involves review under the Strickland standard itself." Id.

at 785. The standards created by Strickland and § 2254(d) are both "highly deferential," and

when the two apply in tandem, review is "doubly" so. Id. at 788 (internal quotations and

citations omitted).

   b.  The SJC's Decision

     i.  Witness Testimony And Closing Argument

Colon argues that trial counsel was ineffective when he did not ask Colon's girlfriend

whether Colon knew of the victim's threat to kill his brothers. The SJC found that it "need not

decide whether this was error" because there was no substantial likelihood of a miscarriage of

justice because this testimony was cumulative.  <u>Colon</u>, 449 Mass. at 219.  Specifically, the SJC found that the jury had heard testimony that Colon was aware of similar threats from the victim, that Colon was told before the shooting that the victim was armed, and that the victim told Colon that he would "whip all your asses" and "blow your ass away."  <u>Id.</u>

Colon further argues that trial counsel should have to discussed the defense of others theory during closing argument.  The SJC found that trial counsel had in fact stated that the defendant was afraid for himself and his brothers, and also referenced the threat the victim made to shoot Colon's brother in front of him.  <u>Id.</u> at 220.[13]  The SJC found that trial counsel's decision to not spend more time on the issue was "reasonable given the meager amount of evidence admitted at trial supporting the defense [of others], particularly in light of the fact that the brothers were confronting the victim armed with baseball bats."  <u>Id.</u>  The SJC also noted that the trial judge instructed the jury on self-defense and defense of others.  <u>Id.</u>  Finally, the SJC found that "[g]iven this context, we conclude that the jury were not influenced by errors, if any, that counsel made."  <u>Id.</u>

Colon argues that the SJC erred because the witness's testimony was not cumulative.  He states that the inclusion of this testimony, combined with a supporting argument by counsel regarding the defense of others theory, would have influenced the jury's conclusions.  Memorandum, p. 18.  The jury would have had an alternate reason to find Colon capable of manslaughter rather than murder.  Specifically, the jury would have heard that Colon knew that his brothers risked death, rather than physical injury, and could have inferred that Colon knew

---

[13]  Trial counsel stated in his closing argument: "I suggest to you that Raymond Colon acted as he did and when you are thinking about it . . . ladies and gentlemen of the jury, he acted because he was afraid for himself and afraid for his brother."  TR V/65.

that, unless he took action against the victim, the victim would kill his brothers.  Id. at 17.

The Court finds that the SJC's determinations are not an unreasonable application of the Strickland standard, particularly in light of the fact that this Court's review must be doubly deferential under the AEDPA.  The jury did hear testimony that: (1) the victim had made threats to Colon and his brothers (TR IV/170-171); (2) Colon's brothers approached the victim with baseball bats (TR I/222; TR II, 49-52, 67-68); (3) the victim was unarmed (TR I/ 222; TR II, 50, 52, 74); (4) Colon approached the victim after Colon's brothers had already confronted the victim (TR I/223; TR II/ 51-52, 69-70); and (5) Colon shot the victim in the back as he was fleeing (TR I/ 224; TR II/52, 70, 75).  Accordingly, it was not unreasonable for the SJC to conclude that counsel's decisions with respect to his closing argument and questioning of the witness was an appropriate tactical determination and would not have changed the outcome of trial.

ii.     Franks Hearing

Colon also argues that trial counsel was constitutionally ineffective when he failed to request a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), based on allegedly false statements a state trooper made in his affidavit supporting a search warrant.  Petition, p. 8. Colon does not argue this ground in his Memorandum.  Nevertheless, Colon's claim fails.

In order to obtain a Franks hearing, a defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause."  Franks, 438 U.S. at 155-6.  The SJC rejected Colon's ineffective assistance claim because it found that a Franks hearing was not warranted.  It

found "that nothing in the record, including the documents that the defendant cites in his brief, provides any basis for a showing of a knowing or intentional false statement or reckless disregard for the truth." Colon, 449 Mass. at 223. Accordingly, the SJC concluded that "[b]ecause the defendant has not shown that a motion for a Franks hearing would have been successful, counsel was not ineffective for failing to request one." Id. Colon has not provided any argument to dispute the SJC's findings. Such failure is fatal to his claim. See, e.g., Garcia v. Thaler, No. 08-2673, 2010 WL 793691, * 7 (S.D. Tex. March 5, 2010). Accordingly, Colon has not established that his trial counsel's failure to request a Franks hearing constituted ineffective assistance of counsel. Therefore, he has failed to show that the SJC's findings are contrary to or involved an unreasonable application of federal law.

> ### iii. Manslaughter Instruction

Colon argued in his Petition that counsel was constitutionally ineffective for failing to request a manslaughter instruction on the basis of provocation.[14] Petition, p. 8. Colon did not argue this claim in his Memorandum. Nevertheless, Colon's claim fails.

The SJC denied this claim under state law, holding that "no view of the evidence introduced at trial would support an instruction based on provocation." Colon, 449 Mass. at 220. The SJC further found that Colon's claim that he acted in self-defense undercut his contention that he acted on heat of passion or provocation. Id. at 222. Accordingly, the SJC concluded that trial counsel was not ineffective for failing to request a manslaughter instruction. Id.

Trial counsel's failure to request a manslaughter instruction based on provocation may rise to the level of constitutional ineffectiveness if it in some way deprived Colon of "a

---

[14] The trial judge did give a voluntary manslaughter instruction on another basis. Colon, 449 Mass. at 220.

meaningful opportunity to present a complete defense." Exilhomme v. Spencer, No. 08-10552, 2011 WL 3759219, *11 (D. Mass. August 24, 2011) (citation omitted). Evidence is sufficient to warrant a manslaughter instruction based on provocation if "there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused temper to cool." Id. at *12 (citing Commonwealth v. Keohane, 444 Mass. 563, 567 (2005)). Thus, whether trial counsel's representation fell below reasonable professional standards by not requesting the instruction is a factual question to which this Court must grant considerable deference. Id. at *11.

In support of its denial of Colon's claim, the SJC found that after seeing the victim, Colon "drove to his mother's house, went upstairs, retrieved his address book, walked with his brothers (who were carrying bats) from his mother's house to Gonzalez's apartment, had a conversation with Gonzalez, procured a gun from the 'trap' in the hallway ceiling, returned to Gonzalez's bedroom, saw the victim from the window with his brother Elliot 'going towards him,' ran and grabbed the gun, and then went outside to confront the victim." Colon, 449 Mass. at 221-222. Colon has not rebutted the SJC's factual finding by clear and convincing evidence, and this Court must defer to the SJC's determination that the evidence does not support the reasonable-provocation instruction. Accordingly, Court finds that the SJC's determination that counsel was not ineffective was not contrary to nor an unreasonable application of federal law.

2.    Claims Raised Before Single Justice

Colon argued before the single justice that trial counsel was constitutionally ineffective because he did not investigate and call as witnesses: (1) Dr. Brown, a forensic psychologist who

would have testified that Colon's prior experiences with the victim would have made him "hypervigilant" and "prone to perceive events as presenting an imminent danger;" and (2) a security guard who had witnessed a prior altercation between Colon and the victim. Amended Petition, p. 3; Memorandum, p. 32-37. The Commonwealth argues that these claims are procedurally defaulted because a single "gatekeeper" justice of the SJC denied review of these claims pursuant to Mass. Gen. Laws c. 278 § 33E, and that this is an independent and adequate state ground that bars this Court's review. Opposition, p. 21-23. This Court agrees.

       a.      <u>Independent And Adequate State Law Grounds</u>

"Habeas review is not available in federal court unless, to use the statutory term, it is review of a 'claim that was adjudicated on the merits in State court proceedings.'" <u>Simpson v. Matesanz</u>, 175 F.3d 200, 205 (1st Cir. 1999). This arises out of "the long-standing rule that federal courts do not review state court decisions which rest on 'independent and adequate state grounds.'" <u>Id.</u> at 205-206. "Such independent and adequate grounds exist where 'the state court declined to hear the federal claims because the prisoner failed to meet a state procedural requirement.' In such a case, 'considerations of comity and federalism bar the federal court's review.'" <u>Id.</u> at 206 (internal citations omitted).

Because Colon was convicted of first-degree murder, Mass. Gen. Laws c. 278 § 33E governs his appeal from a denial of state court collateral attacks on his conviction after his direct appeal. <u>Phoenix v. Matesanz</u>, 189 F.3d 20, 24 (1st Cir. 1999). Pursuant to Section 33E, after a conviction has been upheld, further review is available only if a single "gatekeeper" justice of the SJC determines that the issue is "new and substantial" and therefore worthy of review by the full SJC. Mass. Gen. Laws c. 278 § 33E; <u>Commonwealth v. Gunter</u>, 459 Mass. 480, 487 (2011)

(citing Dickerson v. Attorney Gen., 396 Mass. 740, 744 (1986)).  An issue is not "new" where either "it has already been addressed, or where it could have been addressed had the defendant properly raised it at trial or on direct review" and "where the grounds advanced for it were available to the defendant at the time of his trial or direct appeal." Commonwealth v. Ambers, 397 Mass. 705, 707-8 (1986).  An issue is substantial if it is "a meritorious issue in the sense of being worthy of consideration by an appellate court." Gunter, 459 Mass. at 487.  "The bar for establishing that an issue is 'substantial' in the context of the gatekeeper provision of 33E is not high." Id.  The single justice's determination is final and unreviewable. Phoenix, 189 F.3d at 24

In affirming the denial of Colon's motion for a new trial, the single justice found that Colon's claims were neither new nor substantial.  RA 69 ("Even if [petitioner's] claims would qualify as "new," I conclude that they are not substantial.").  "A Single Justice's finding that a petitioner has not raised a 'new-and-substantial' question for further review constitutes a finding of procedural default under state law." Costa v. Hall, No. 11-1025, 2012 WL 745286, *5 (1st Cir. March 8, 2012).  Thus "[t]he Single Justice's finding that neither of [Colon's] ineffective assistance of counsel claims presented 'new and substantial questions' within the meaning of § 33E review constitutes and independent and adequate state ground." Id. at * 6.  Accordingly, Colon's claims of ineffective assistance of counsel regarding the security guard and psychologist are procedurally defaulted and habeas review is barred.

b.     Exceptions To Procedural Default Rule

Faced with a state court judgment resting upon an adequate and independent state ground, this Court may consider Colon's claim only if he "establishes 'cause and prejudice' with respect to the procedural default." Horton, 370 F.3d 75, 81 (1st Cir. 2004); see also Gunter, 291

F.3d at 78.  To establish cause, Colon must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Horton, 370 F.3d at 81.  In determining whether prejudice was established, "[t]he question is not whether the defendant would more likely than not have received a different verdict," but whether "he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  Strickler v. Greene, 527 U.S. 263, 289-90 (1999) (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)).[15]

"Because [Colon] has procedurally defaulted his ineffective assistance of counsel claims in state court, he cannot simply rely on what is at heart the merits of those claims, the alleged ineffectiveness, to show cause for procedural default of the same claims."  Costa, 2012 WL 745283 at * 7 (citing Edwards v. Carpenter, 529 U.S. 446, 453 (2000)).  Colon must independently satisfy the cause and prejudice standard with respect to his ineffective assistance claim.  Id.  Colon has not argued explicitly "cause and prejudice" to excuse the default.[16]

---

[15] "[E]ven absent a showing of cause and prejudice, a federal court exercising its habeas powers should nonetheless overlook a procedural default and hear a barred constitutional claim on the merits if its failure to do so would result in a fundamental miscarriage of justice."  Burks, 55 F.3d at 717.  "To show that a fundamental miscarriage of justice would occur in the habeas context, 'petitioner must establish actual innocence.'"  Gunter, 291 F.3d at 83 (quoting Simpson, 175 F.3d at 210).  Here, Colon makes no claim of actual innocence.

[16] Even assuming, arguendo, that Colon's procedural default could be excused, his claims are without merit.  Colon himself stated that trial counsel did not call the security guard to testify because he was "hiding something."  See App., Exhibit O at Exhibit D.  Strickland dictates that reviewing courts must provide counsel wide latitude in making tactical decisions.  Castillo v. Matesanz, 348 F.3d 1, 15 (1st Cir. 2003).  Further, as discussed supra, any further testimony regarding Colon's awareness of prior threats by the victim would have been cumulative.  Regarding the psychologist's testimony, the single justice determined that Dr. Brown's testimony would not have been admissible under state law, a determination that cannot form the basis for federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  In any event, Colon's counsel would not have been ineffective for failing to introduce evidence that would have been excluded under state law.  See Knight, 447 F.3d at 16 ("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-prejudicial or non-existent."); Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir.

Accordingly, his claims of ineffective assistance of counsel are barred from review because the single justice's decision rests on an independent and adequate state ground.

For the reasons stated above, the Court therefore recommends that Colon's Petition on the basis on ineffective assistance of trial counsel be denied.

D.    Ground Three: Prosecutor's Closing Argument

Colon argues that the SJC erred when it concluded that the prosecutor's closing argument did not impact the jury's verdict and that counsel was not ineffective in failing to object.  Petition at 8-9;  Memorandum, p. 18-29.  Specifically, Colon argues that the prosecutor inappropriately argued that Colon had killed the victim in order to take over the victim's drug business and such argument relieved the government of its burden of proof.  Petition at 9; Memorandum, p. 19, 24.  Colon argues that the prosecutor's statements violated his Fourteenth Amendment right to due process, his Fifth Amendment right against self incrimination, and his Sixth Amendment rights to compulsory process and confrontation.  Id.; Memorandum, p. 18-28.[17]  The Respondent argues Colon's claim is procedurally defaulted and therefore not available for habeas review.  Opposition, p. 25-27.

1.    Independent And Adequate State Law Grounds

In reviewing Colon's claims, the SJC noted that Colon did not object to the closing argument at trial, accordingly reviewed his claim under the "substantial likelihood of a miscarriage of justice standard," and found no error.  Colon, 449 Mass. at 224-5.  Specifically, the SJC found that "all of the factual assertions the defendant points to as improper were

---

1999) (counsel's performance was not deficient if he declined to pursue a futile tactic.).

[17]  Colon did not allege this violation of his Sixth Amendment rights in his Petition.  For the reasons discussed supra, the Court will consider this claim as argued in the Memorandum.

supported by the evidence admitted or based on logical inferences drawn therefrom" and the prosecutor's comments did not amount to unsworn testimony.  Colon, 449 Mass. at 224-5.  The SJC also noted that the trial judge instructed the jury that motive was not an essential element of murder in the first degree and that closing arguments were not evidence.  Id. at 225.

A state court's decision to find a forfeiture based on the defendant's failure to object at trial is an "independent and adequate state ground" for a decision so long as the state court consistently applies its contemporaneous objection rule and has not waived it in the particular case by basing the decision on some other ground.  Lynch v. Ficco, 438 F.3d 35, 45 (1st Cir. 2006); Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995).  In Massachusetts, the rule that "a claim not raised is waived" is regularly enforced and "firmly established."  Gunter, 291 F.3d at 79.  The SJC consistently enforces the rule that unpreserved claims are forfeited, see id., and enforced the rule in the instant case.  Colon, 449 Mass. at 223.  Although the SJC did review Colon's claim for a substantial miscarriage of justice, "this sort of limited review does not work a waiver of the contemporaneous objection requirement."  Horton, 370 F.3d at 81 (citations omitted); see also Gunter, 291 F.3d at 80 ("The mere fact that a state appellate court engages in a discretionary, and necessarily cursory, review under a 'miscarriage of justice' analysis does not in itself indicate that the court has determined to waive an independent state procedural ground for affirming the conviction.") (quotation omitted); Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) ("This discretionary miscarriage-of-justice review does not amount to a wavier of the state's contemporaneous objection rule.").  Accordingly, Colon's claim regarding the prosecutor's statements is procedurally defaulted and habeas review is barred.

2. <u>Exceptions To Procedural Default Rule</u>

As stated above,  this Court may consider Colon's claim only if he "establishes 'cause and prejudice' with respect to the procedural default." <u>Horton</u>, 370 F.3d at 81; <u>see also</u> <u>Gunter</u>, 291 F.3d at 78.  Colon has not argued "cause and prejudice" to excuse the default.  However, Colon has argued that trial counsel was ineffective for failing to object to the prosecutor's comments and presented this claim to the SJC.  Petition, p. 8; Memorandum, p. 28-9.  Constitutionally ineffective assistance of counsel may be an objective factor establishing cause to excuse procedural default so long as the petitioner exhausted his ineffective assistance of counsel claim in state court.  <u>Janosky</u>, 594 F.3d at 44 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986)).  The Court will therefore consider whether this claim of ineffective assistance of counsel establishes cause excusing Colon's failure to object at trial.

3. <u>Ineffective Assistance Of Counsel</u>

The First Circuit has not decided whether review of an ineffective assistance of counsel claim within the cause and prejudice rubric should be viewed under the AEDPA's deferential standard of review or <u>de novo</u>.  <u>Janosky</u>, 594 F.3d at 44-45.  The parties have not argued for a particular standard of review.  Therefore, like the First Circuit in <u>Janosky</u>, the Court will assume without deciding that <u>de novo</u> review is appropriate.  <u>Id.</u>

As stated above, under <u>Strickland</u>, Colon must show that counsel's performance was deficient and that it prejudiced his defense.  The Court does not need to address each part of this test; it may stop its analysis if it determines that Colon does not satisfy either part.  <u>Janosky</u>, 594 F.3d at 45.  Because a determination as to whether Colon received ineffective assistance of counsel necessitates a review of the prosecutor's closing argument, the Court begins its analysis

there.

        a.      <u>Prosecutor's Statements</u>

Colon argues that because the prosecutor's arguments violated his specific constitutional rights of compulsory process (Sixth Amendment), confrontation (Sixth Amendment), and self-incrimination (Fifth Amendment), he should be afforded a higher degree of review. Petition, p. 9; Memorandum, p. 18-19. Specifically, Colon argues that the Court should examine the record to assure that prosecutorial misconduct "in no way impermissibly infringed" on his constitutional rights. Memorandum, p. 19 (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).

However, Colon has failed to establish that his specific constitutional rights have been infringed. Colon argues that the prosecutor's closing argument relied on "defendant's actual testimony and massaged it into statements to incriminate him through said impermissible inferences." Memorandum, p. 22. Yet, the SJC found correctly that "all of the factual assertions the defendant points to as improper were supported by the evidence admitted or based on logical inferences drawn therefrom." <u>Colon</u>, 449 Mass at 224.

Regarding Colon's Sixth Amendment rights to compulsory process and confrontation, Colon argues that the prosecutor "molded statements made by other witnesses" and by doing so "robbed the defendant of compulsory process and the opportunity to confront the witnesses who may have, but did not, so testify." Memorandum, p. 22. The Supreme Court in <u>Donnelly</u> dispatched a similar argument regarding the right to confrontation, stating "this argument is without merit, for the prosecutor here . . . introduced no statements made by a person unavailable for questioning at trial." <u>Donnelly</u>, 416 U.S. at 643 n. 15. Such is the case here. In addition,

Colon does not show how the prosecutor's comments at the conclusion of the evidence interfered with his Sixth Amendment right to compulsory process to obtain witnesses in his favor. Accordingly, the Court will review Colon's claims under the narrower due process standard of review. Id. at 642.

In considering statements made by a prosecutor, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 180 (1986). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly, 416 U.S. at 643).[18] The Supreme Court has cautioned that, in making this determination, a court must be careful to review the prosecutor's comments in the context of the entire proceeding. United States v. Young, 470 U.S. 1, 11-12 (1985).

In assessing whether the prosecutor's comments require a new trial, the court will examine "(1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case." Olszewski v. Spencer, 466 F.3d 47, 59 (1st Cir. 2006) (quoting United States v. Lowe, 145 F.3d 45, 50 (1st Cir. 1998)).

Although Colon admits that he testified at trial about his previous involvement with the victim when Colon was a drug courier, he argues that the prosecutor "wrongly seized upon that testimony and painted the defendant as a ruthless drug dealer who would kill to obtain his own

---

[18] Although "there is no precise federal standard governing due process claims based on prosecutor's remarks," the First Circuit has held that Darden and Donnelly provide the relevant law. Kirwan, 631 F.3d at 589.

'corner.'" Memorandum, p. 20, 22.  Colon argues that there was no evidence that at the time of

the shooting that: (1) he was a drug dealer; (2) he wanted to get back into the drug business; (3)

he killed the victim to get the victim's drug business; or (4) he wanted to obtain the victim's

"corner."  Id. at p. 20-21.  Colon argues that the prosecutor's statement created a false

impression that the Commonwealth had more evidence than it had admitted and gave the jury a

factual version that was not warranted by the evidence.  Id. at p. 21, 27.

Colon specifically objects to the following statements by the prosecutor:

- "He is trying to give you a snippet of the life of a drug dealer, which he was, and

  he is trying to use it as a defense for killing a man . . . . He would like you to

  apply the law of the drug dealer, the law of the jungle; . . . you can't shoot an

  unarmed man in the back because you are mad at him or because you want his

  business, even his illegal drug business." Tr. V/75-76.

- ". . . But it wasn't just the debt . . . at issue was not only his share, but [the

  victim's] share, too." Tr. V/80.

- "He didn't want out of the drug business, he had been cut out by [the victim].  He

  wanted to get back in." Tr. V/82.

Memorandum, p. 26 n. 10.

It is improper for a prosecutor to comment on facts not in evidence or misrepresent

evidence actually presented at trial.  United States v. Auch, 187 F.3d 125, 129 (1st Cir. 1999);

Donnelly, 416 U.S. at 646.  Such comments are improper because they "may profoundly impress

a jury and have significant impact on the jury's deliberations."  Donnelly, 416 U.S. at 646.

However, a prosecutor has the prerogative to summarize facts supported by the evidence and

argue reasonable inferences to the jury.  See United States v. Henderson, 320 F.3d 92, 105 (1st Cir. 2003); United States v. Martinez- Medina, 279 F.3d 105, 119 (1st Cir. 2002).

The Court concludes that the SJC correctly found that the prosecutor's statements were reasonable inferences from the record.  See, e.g., Tr. I/216-17, Tr. II/30-32 (petitioner and the victim had been friends and "drug deal partners," but their relationship deteriorated because petitioner owed the victim money); Tr. IV/130-32, 178 (petitioner and the victim were friends and sold heroin together); Tr. IV/134-35, 181 (petitioner made $500 per day from dealing drugs; the victim made $750-$800 per day); Tr. IV/141, 145-46 (in January 1999, friction developed between petitioner and the victim because the victim said petitioner owed him money); Tr. IV/182 (as a result of the dispute, petitioner was cut out of the drug dealing business and stopped making money from it).  The SJC correctly concluded that the prosecutor argued reasonable inferences to the jury, even if those inferences were not the only ones that could be made from the evidence.  See Leftwich v. Maloney, No. 01-10284, 2006 WL 2883346, *7 (D. Mass. October 5, 2006) ("The prosecutor's arguments were not inappropriate, even if the inference she urged the jury to make were not the only ones that could be made on the evidence.").  Accordingly, Colon's argument that the prosecutor's comments were improper are without merit.

Even assuming, arguendo, that the prosecutor misstated the evidence, the Court does not find that it "so infected the trial with unfairness as to make the resulting conviction of a denial of due process."  Donnelly, 416 U.S. at 643.  The judge instructed the jury that motive is not an essential element of murder in the first degree and instructed the jury that the closing arguments were not evidence.[19]  See Dagley v. Russo, 540 F.3d 8, 18 (1st Cir. 2008) (trial judge's

---

[19]  The trial judge instructed the jury in relevant part: "So if, for example, in the course of final arguments . . . either attorney gave you an impression as to how he or she thinks that you

instruction limited potential effect of prosecutor's statement); <u>Sullivan v. Warden</u>, No. 95-1994, 1996 WL 354006, * 1 (1st Cir. June 26, 1996) (unpublished) (prosecutor's closing remarks did not render trial fundamentally unfair given trial court's repeated instructions that jurors should rely on their own memory of the evidence). In addition, "there was ample evidence to support a conviction for first-degree murder, so it is very unlikely that the comment[s] influenced the jury's verdict." <u>Kirwan</u>, 631 F.3d at 589. Specifically, the jury heard evidence that Colon obtained a gun, entered a on-going confrontation with the unarmed victim, and shot the victim in the back as he fled.

"Because we find that the prosecutor's comments were fairly inferable from the evidence . . . his attorney need not have objected to them." <u>Kirwan</u>, 631 F.3d at 589 n.4. Accordingly, Colon has not established that his trial counsel provided ineffective assistance of counsel and, by extension, has not established cause for his procedural default. Colon's claim is therefore barred from habeas review.

E. <u>Ground Four: Manslaughter</u>

Colon argues that pursuant to Mass. Gen. Laws c. 278 § 33E, the SJC should have reduced the verdict to a lesser degree of guilt. Petition, p. 11. Colon does not argue this ground in his Memorandum. Because this state law determination is not subject to federal habeas

_____

ought to find the facts . . . or talked about things that you don't recall from the testimony, than ignore it, because it is your collective memory of the testimony that control. It is for you to make your factual findings without pressure or interference from anyone. And I stress that point, it is my way of making clear to you your complete and total independence in this regard." TR V/98-99. The trial judge also stated: "[F]inal arguments of counsel, helpful, appropriate, but not evidence." TR V/107. Regarding motive, the trial judge instructed the jury: "Now please note that motive is not an essential element of first degree murder . . . If there is evidence of motive or a lack of such evidence, then you may consider that; but the Commonwealth is not required to prove motive to prove the defendant guilty of murder in the first degree." TR V/145.

review, see Estelle, 502 U.S. at 67-68, the Court recommends that Ground Four of the Petition be denied.

      F.     Ground Five: Ineffective Assistance Of Appellate Counsel

Colon argues that his appellate counsel provided ineffective assistance of counsel by failing to argue on appeal that trial counsel was ineffective for failing to call Dr. Brown and the security guard as witnesses. Petition, p. 12-b; Memorandum, p. 55-56. Where trial counsel, however, was not ineffective, the failure of appellate counsel to raise the ineffectiveness of trial counsel is not in itself ineffective. See Cruz v. Spencer, No. 06-12046, 2008 WL 4427206, * 7 (D. Mass. September 23, 2008). Colon's claims on this basis should therefore be denied.

## IV.    RECOMMENDATION

For the foregoing reasons, I recommend that the Court DENY Petitioner Raymond Colon's Petition for Writ of Habeas Corpus.

## V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital,

199 F.3d 1 (1st Cir. 1999); <u>Sunview Condo. Ass'n v. Flexel Int'l</u>, 116 F.3d 962 (1st Cir. 1997);

<u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge